Maurice A. RAPOPORT, et al., Plaintiff,

v.

REPUBLIC OF MEXICO, et al., Defendants.

Civ. A. No. 84–2054.

United States District Court, District of Columbia.

Oct. 17, 1985.

Maurice A. Rapoport, pro se.

Geo. R. Kucik and Samuel C. Schwab, Michael M. Maney and Marge K. Pfeiffer, Washington, D.C., for defendants.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

This matter comes before the Court on the defendants' motion to dismiss. It is well-established law that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All well-pled allegations in the plaintiff's complaint must be accepted as true at this stage. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1976); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 969 (D.C. Cir.1979). Applying these standards to the instant action, and for the reasons stated herein, the Court finds that the motions to dismiss must be granted.

## I

On July 9, 1984, pro se plaintiff, Maurice Rapoport, filed a fifty-three page complaint naming thirty-five defendants, in which he alleged causes of action for various commercial and intentional torts (including kidnapping and torture). The defendants filed motions to dismiss in November 1984. Rapoport later sought leave to file an amended complaint,[1] adding additional claims under the federal securities laws, and dropping all but four defendants: Banco Mexicano Somex, S.A. ("Somex"); Nacional Financiera, S.A. ("Nafinsa"); the United Mexican States ("Mexico") and Sociedad Financiera de Industria y Descuento ("Sofides").[2] On May 20, 1985, the Court granted leave to file the amended complaint.

Concluding that all of the issues raised in the amended complaint are substantially the same as those raised in the original complaint, on April 1, two of the remaining defendants, Nafinsa and Somex, filed supplemental memoranda in support of their pending motions to dismiss the original complaint. On April 16, 1985 Mexico also filed a supplemental memorandum which adopted the arguments set forth in the Nafinsa and Somex memoranda. The plaintiff was ordered to respond to the motions to dismiss by April 29, 1985. Rapoport filed his responses on May 1, 1985.

The defendants move to dismiss on the following grounds: sovereign immunity un-

der the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602–1611; non-justiciability under the Act of State doctrine; the doctrine of res judicata and the estoppel effect of the previous adjudications in New York and Mexican courts; the absence of indispensable parties, the doctrine of *forum non conveniens,* due process considerations, and the District of Columbia statute of limitations. A recitation of the facts as reflected in the record, and plaintiff's litigious history concerning the ownership of various promissory notes issued by Somex Bank, is helpful for an understanding of the Court's decision.

The plaintiff, Maurice Rapoport, a naturalized American citizen, has spent a considerable amount of time living and working in Mexico. While there, he acquired an interest in a Mexican corporation ("Constructora") and married Teresa Solorzano Rocho, a Mexican citizen. The action evolves around certain funds deposited by Rapoport, and Ms. Solorzano, into two Mexican bank accounts.

Commencing in 1969, Constructura invested funds in Mexican promissory notes. Those notes were issued by Sociedad Mexicana de Credito Industrial, S.A., a credit institution now known as Banco Mexicano Somex, S.N.C. (Somex). The investments were payable in Mexican currency at Somex's Mexico City office. During 1977 and 1978, Rapoport also made a series of peso deposits into another account entitled "Maurice Rapoport and/or Diane Rapoport, his daughter," which were payable to Rapoport or his daughter.

Rapoport married Ms. Solorzano on December 15, 1976. However, he was expelled from the country in 1977. In the ensuing months, deposits and withdrawals were made by Ms. Solorzano, in connection with the Constructora account. Rapoport returned to Mexico in September 1978. Upon re-entry, Rapoport was arrested by

**1.** The plaintiff moved for leave to file the amended complaint on April 24, 1985.

**2.** The additional defendant, Sociedad Financieria de Industria y Descuento, was not named in the original complaint. There is no indication that this new defendant has ever been served.

Mexican authorities for violation of the immigration laws.

During that period, Ms. Solorzano instituted divorce proceedings against him in the 4th Family Court of the Federal District of Mexico. On December 7, 1978, Somex Bank was served with an Order from the 4th Family Court, directing it to withhold 20,000 pesos per month, out of the interest on Rapoport's investments, to be paid to Ms. Solorzano as alimony.

While incarcerated, Rapoport became anxious about his account funds. With the assistance of two prison comrades, Carlos Herrera Crespo and Louis Barragan Levya, and notwithstanding the alimony order, Rapoport devised a scheme to overcome his inability to withdraw all of the money from his account. He concocted a plan in which Herrera and Barragan would withdraw Rapoport's funds from Somex, return the funds to him, and receive a fee for their participation in the plan. Accordingly, the plaintiff executed promissory notes in favor of Barragan and Herrera, aggregating the full amount of his deposits in the Rapoport account. They in turn, executed notes in favor of Rapoport for identical amounts less ten percent (their fee for "services rendered".)

The plan backfired, and in March 1979, Herrera and Barragan filed suit against Rapoport on the promissory notes in the 40th Civil Court of the Federal District of Mexico. By Court Order dated March 15, 1979, and with Rapoport's consent, Somex Bank was directed to pay 4,514,190 pesos to Herrera and Barragan in satisfaction of their claims. The Family Court nonetheless directed Somex to continue its monthly payments to Rapoport's ex-wife.

Thus, as of March 1979, Somex Bank was in receipt of conflicting orders from the 4th Family Court and the 40th Civil Court, regarding the disbursement of the funds held in the Rapoport account. Accordingly, Somex commenced a "de consignacion" proceeding in the 28th Court of Civil Justice of the Federal District of Mexico, in an effort to resolve the conflict. In a consignation proceeding (in the nature of our interpleader action), a bank deposits funds in the Court, and as certain instruments due the account mature, the bank continues to make such deposits. Mr. Rapoport, Ms. Solorzano, Ms. Diana Rapoport, Mr. Herrera, and Mr. Barragan all appeared in this suit. During that proceeding, in August 1979, Somex deposited 2,940,572 pesos with defendant Nacional Financiera, S.A. (Nafinsa), the official Government depository bank for consignation proceeds. Somex, thereafter, deposited the proceeds of every certificate of deposit it held in Rapoport's name on a regular basis as the certificates matured. When the process was completed, in October 1981, the Civil Court decreed that Somex was freed from its obligation to Rapoport and other claimants to the fund. (Pena Gomez Affidavit, Exhibit 1 at 3.)

Meanwhile, another dispute had arisen during the pendency of the divorce proceedings. Somex Bank began to receive conflicting instructions from the Rapoports as to the rightful payee of the Constructora account (and authority to withdraw funds). For purposes of clarification, on August 25, 1978, Somex Bank instituted another consignation proceeding in the 7th Civil Court of Justice of the Federal District of Mexico. In June 1980, that Court decreed that Somex's deposit of the Constructora funds with Nafinsa had freed the bank of its obligations to Rapoport and the corporation.

The funds became further subject to dispute when Mana Erbe commenced an action against Rapoport for 2,940,572 pesos in the 30th Civil Court of Mexico City, claiming to be the assignee of the promissory notes which Rapoport had executed in favor of Herrera and Barragan for the full value of his personal account. Mr. Erbe obtained an attachment of the funds in that amount held by the 28th Civil Court in the interpleader action. The 28th Civil Court then transferred such amount to the 30th Civil Court pending resolution of Mr. Erbe's claim.

Rapoport was released from prison in March 1980, and expelled from Mexico. Subsequent to his return to the United

States, Rapoport instituted a series of actions against Somex and Nafinsa.

Rapoport is no stranger to the United States courts. He first filed an action against Somex in the Supreme Court of the State of New York, Ulster County, in May 1980, alleging claims for breach of contract and loss of income. Somex removed the action to the United States Court for the Northern District of New York. After dismissing Manufacturers Hanover as a defendant, Judge McCurn transferred the action to the Eastern District of New York. *Rapoport v. Banco Mexicano Somex, S.A.,* No. 80 Civ. 3465 (TCP) (E.D.N.Y.). In view of the absence of indispensable parties, namely, the other Mexican claimants to the disputed funds, defendant Somex moved to dismiss. Judge Platt granted the motion on May 7, 1981. Rapoport appealed the dismissal, and the Second Circuit affirmed. *Rapoport v. Banco Mexicano Somex,* 668 F.2d 667 (2d Cir.1982).

> First, Mrs. Rapoport, Ms. Diane Rapoport, Mr. Herrera, Mr. Barragan, and Mrs. Erbe all should be joined as parties. Under Rule 19(a)(2), all claim an interest relating to the subject of this action, and all may be impeded in their ability to protect their interest should this action go forward. Furthermore, the Bank [Somex] would be subjected to substantial risk of incurring multiple liability by reason of the claims of the absentees. Second, at least four of those persons are Mexican citizens and are beyond the jurisdiction of this Court.

*Rapoport v. Banco Mexicano, Somex, S.A.,* 80 Civ. 3465, slip op. at 5-6 (E.D.N.Y. May 7, 1981). Judge Platt noted that a United States court could not adequately protect the interests of the absent Mexican parties; "in equity and good conscience," therefore, the action could not proceed without them. *Rapoport,* slip op. at 6.

Thereafter, Rapoport commenced picketing at Somex's New York Office, wielding a sign denouncing Somex as a "crooked Mexican Bank." In an attempt to enjoin the picketing, Somex commenced an action before the Supreme Court of the State of New York, New York County. Rapoport had the action removed to the Southern District of New York and filed an answer and cross-complaint, reasserting the breach of contract claims, adding allegations of fraud and false imprisonment, and adding Nafinsa as a party-defendant.

Among the papers filed during the course of the action, was an affidavit setting forth Rapoport's theory of a conspiracy involving Judge Platt's law clerk and other court personnel. Rapoport argued that the addition of the tort and conspiracy claim distinguished the Southern District suit from the action decided by Judge Platt, allowing him to escape the bar of *res judicata.* However, Judge Brieant disagreed and dismissed Rapoport's cross-claims on June 23, 1982. *Banco Mexicano Somex, S.A. v. Rapoport,* 82 Civ. 0980–CLB (S.D.N.Y. June 23, 1982). It should be noted that the claims against Nafinsa were dismissed for lack of jurisdiction, as the court found that Nafinsa did nothing in the United States with respect to the subject matter of the action. As to Somex, the court adopted Judge Platt's earlier ruling that Rapoport's claims could not be fairly adjudicated without the presence of the Mexican claimants to the contested pesos accounts. Rapoport appealed Judge Brieant's dismissal and the Second Circuit affirmed in an unpublished opinion dated March 7, 1983. *Rapoport v. Banco Mexicano Somex, S.A.,* 729 F.2d 1442 (2d Cir. 1983).

While the appeal from Judge Brieant's decision was still pending, Rapoport filed two additional actions against Somex. The first action, filed in the Civil Court of the City of New York, County of New York, Small Claims Court, was dismissed for lack of jurisdiction by order dated September 13, 1982. *Rapoport v. Banco Mexicano Somex, S.A.,* Index No. 8525/82 (N.Y.Civ. Ct., Sept. 13, 1982). The second action against Somex, which Rapoport filed in the Supreme Court of the State of New York, New York County, was removed by Somex to the Southern District of New York, and assigned to Judge Weinfield. Judge Weinfield dismissed the action, February 2, 1983, on the basis of *res judicata. Constructora Republica, S.A. v. Banco Mexi-*

*cano Somex, S.A.,* 82 Civ. 7200 (S.D.N.Y. Feb. 2, 1983). However, after the dismissal, Rapoport continued to file frivolous motions and other papers.

Judge Weinfield again addressed the action on May 17, 1983:

Plaintiff is advised that continued abuse of the process of the court by filing repeated and frivolous motions may bring into play the Court's power to enjoin such filings, to strike redundant and scandalous matter and to impose sanctions.

Order, *Constructora Republica, S.A. v. Banco Mexicano Somex, S.A.,* 82 Civil 7200 (S.D.N.Y. May 17, 1983). (Eg. Notice of Motion for a Mistrial proposing another conspiracy theory, this one between Judge Weinfield's law clerk and opposing counsel.)

An appeal was dismissed for want of prosecution. Rapoport then turned his attention to the District of Columbia, filing the present action in July 1984. The claims are the same as those presented in the prior New York actions, with the exception of the securities and 18 U.S.C. § 371 claims. The present action constitutes the fifth action against Somex.

## II

The Court notes that the Act of State doctrine may well foreclose inquiry concerning the legality of alleged governmental acts of the United Mexican States upon which the plaintiff bases his claim. Moreover, the defendants' arguments for immunity under the Foreign Sovereign Immunities Act are well-taken. However, the Court need not address these issues as no justiciable issues have been presented in the complaint.

In the amended complaint, Rapoport alleges violations of Section 12(1) of the Securities Act of 1933, 15 U.S.C. § 77*l* in that 'defendants sold through the mails of the United States various unregistered securi-

ties, including promissory notes, certified bonds, and debentures." The alleged sales occurred between 1960 and 1979. The notes held maturity dates through 1981. Defendants have moved to dismiss these claims on the grounds that they are time-barred.

■ Rapoport's principal reliance upon *Garcia v. Chase Manhattan Bank, N.A.,* 735 F.2d 645 (2d Cir.1984) is misplaced. In *Garcia,* the plaintiffs sought to recover amounts due on two certificates of deposits. Resolution of the action involved the application of the six year New York limitations period governing breach of contract actions. However, it is clear that the instant securities [3] violations claims are subject to a one year statute of limitations under Section 13 of the 1933 Act., 15 U.S.C. § 77m. *Braka v. Multibanco Comerex S.A.,* 589 F.Supp. 802, 805 (S.D.N.Y.1984). As the plaintiff admits that he made demands for payment of the securities in March of 1980,[4] his contentions that the statute should be tolled do not cure the delinquency in bringing the claims. The securities claims are barred by the statute of limitations.

■ Rapoport also alleges a cause of action in that "he has constantly and consistently demanded that these securities be registered with the Securities and Exchange Commission, and [that] Mr. Beteta has willfully refused, in a deliberate conspiracy to defeat the laws of the United States." This claim must also fail, as it is clear that no private right of action can exist under 18 U.S.C. § 371. *Lamont v. Haig,* 539 F.Supp. 552, 558–59 (D.S.D.1982).

■ The remaining claims for commercial and intentional torts are barred by the doctrine of *res judicata* and collateral estoppel. Judge Platt held that such claims could not be brought in the absence of the other potentially adverse claimants, four of

---

**3.** The *Braka* Court noted that a threshold question [was] whether the CDs are "securities" regulated by securities law. Although the CDs were sold by a foreign bank and were not regulated as a similar CD from a United States Bank would be regulated, the Court assumed for the

purposes of the motion that they are securities under Title 15. This Court will make a similar assumption.

**4.** Amended Complaint, at 6, 9 and 10.

whom are Mexican citizens beyond the jurisdiction of the Court. *Rapoport v. Banco Mexicano Somex, S.A.,* 80 Civ. 3465 (E.D. N.Y. May 7, 1982) (memorandum and order at 1–5), *aff'd* 668 F.2d 667 (2d Cir.1982) (per curiam). The Second Circuit agreed that: (1) the absent claimants could be prejudiced by a judgment rendered in their absence, and the bank could be prejudiced by incurring multiple liability if the Mexican courts do not recognize the United States judgment; (2) the court could not protect the rights of the Mexican non-parties; (3) the court's judgment would not be adequate without accurate factfinding, which would require witnesses, documentary evidence, and court transcripts all located in Mexico; (4) Rapoport would have an adequate remedy in the consignacion action, where the rights of all parties could be protected. *Rapoport,* 668 F.2d at 669.

■ With respect to defendant Nafinsa, an instrumentality of the Mexican government comparable to the Federal Reserve system in this country, Judge Brieant found that "[Nafinsa] undertakes no commercial acts in the United States, and did nothing in the United States with respect to the subject matter of the action." *Constructora Republica, S.A. v. Banco Mexicano Somex, S.A.,* 82 Civ. 7200 (S.D.N.Y. Feb. 2, 1983). Judge Brieant noted that although Nafinsa has an office in New York, the office has diplomatic status for purposes of engaging in treasury activities for the government of Mexico. *Id.* This Court also finds that it lacks *in personam* jurisdiction over Nafinsa with respect to the commercial and intentional tort claims.

In light of the above considerations, the motions to dismiss are granted.

An appropriate order has been issued.[5]

---

**5.** Defendants' requests for sanctions, attorney's fees and cost will be addressed in a separate order.